UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DARCIE A. HOBSON, | ) | CASE NO. 3:18CV289 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Darcie A. Hobson ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  ECF Dkt. #1. In her brief on the merits, filed on May 16, 2018, Plaintiff asserts that the administrative law judge ("ALJ"): (1) issued a residual functional capacity ("RFC") finding that is not supported by substantial evidence; (2) committed reversible error by not appointing a medical expert to evaluate new evidence; and (3) improperly evaluated her credibility.  ECF Dkt. #12.  Defendant filed a response brief on July 16, 2018.  ECF Dkt. #14.  Plaintiff filed a reply brief on July 31, 2018.  ECF Dkt. #15.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI in July 2011 alleging disability beginning on March 20, 2011.  ECF Dkt. #11 ("Tr.") at 83-84, 751.[2]  The applications were denied initially

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather than the page numbers assigned by the CM/ECF system.  When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages.  Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than

and upon reconsideration.  *Id.* at 113, 123.  Following a hearing, the ALJ issued a decision on August 9, 2013, concluding that Plaintiff was not disabled.  *Id.* at 11.  Plaintiff appealed the ALJ's decision to the Appeals Council, but the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision.  *Id.* at 1.  After the denial by the Appeals Council, Plaintiff filed a complaint in this Court.  The Court reversed and remanded the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  *Id.* at 904. Following the remand, Plaintiff appeared for a second hearing before the ALJ on November 10, 2016, with her attorney and a vocational expert ("VE") present.  Tr. at 814.  On March 1, 2017, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI.  *Id.* at 751.  Plaintiff appealed the ALJ's decision and the Appeals Council declined to accept jurisdiction. Accordingly, the decision issued by the ALJ on March 1, 2017, stands as the final decision.

On February 5, 2018, Plaintiff filed the instant suit.  ECF Dkt. #1.  Plaintiff filed a brief on the merits on May 16, 2018.  ECF Dkt. #12.  Defendant filed a response brief on July 16, 2018.  ECF Dkt. #14.  On July 31, 2018, Plaintiff filed a reply brief.  ECF Dkt. #15.

## II.    MEDICAL AND TESTIMONIAL EVIDENCE

### A.    Medical Evidence

In March 2011, Plaintiff presented for an evaluation of a cough and requested a statement indicating that she could return to work.  Tr. at 309.  A physical examination was largely normal and it was observed that Plaintiff was breathing normally.  *Id.* at 311.  On July 28, 2011, Plaintiff reported "mild" depression, but felt that she could care for herself.  *Id.* at 328.  The clinician assessed Plaintiff's psychological symptoms as "mild" and noted that Plaintiff was "generally doing well."  *Id.*  In September 2011, Plaintiff sought treatment for irritability, trouble sleeping, and episodes of depression.  *Id.* at 404.  Plaintiff's symptoms were rated as "mild" and it was noted that she was "generally doing well."  *Id.* at 405.  Later that month, Plaintiff reported that she felt anxious and irritable due to financial difficulties.  *Id.* at 406.  On examination, Plaintiff had normal breathing and no tenderness in her extremities.  *Id.* at 409.  Plaintiff could stand and

_____

the page number assigned when the Transcript was filed in the CM/ECF system.

walk with a normal gait and participate in an exercise program.  *Id.*  Additionally, Plaintiff reported that she was "doing well" on an antidepressant.  *Id.* at 412.  In November 2011, Plaintiff showed normal breathing, no extremity tenderness, normal gait and station, and an improved mood with medication.  *Id.* at 402, 419.  Plaintiff's psychological symptoms were rated as "mild" and it was noted that she was "generally doing well."  *Id.* at 403.

On February 1, 2012, Plaintiff underwent a psychiatric evaluation in connection with her application for disability benefits.  Tr. at 427.  Plaintiff reported that she could not work or lift heavy objects due to breathing issues and indicated that her depression "comes and goes."  *Id.* at 427.  It was noted that Plaintiff was "somewhat depressed and moody" with coherent and logical thought processes and that her depression was "reasonably under control."  *Id.* at 428-29.  Additionally, the examining psychiatrist opined that Plaintiff had only a mild impairment in dealing with the public.  *Id.* at 429-30.  On February 10, 2012, Plaintiff complained of insomnia and indicated that her medication was no longer helping her mood disorder.  *Id.* at 474.  It was noted that Plaintiff was mildly anxious and that she stated that her ability to get along in social situations was "unimpaired."  *Id.*  Plaintiff's psychological symptoms were described as "mild" and it was noted that she was "generally doing well."  *Id.* at 475.  That same day, Plaintiff also complained to a nurse practitioner of depression, anxiety, and trouble sleeping.  *Id.* at 477.  Plaintiff's breathing was normal and she could stand and walk with a normal gait.  *Id.*  Physical examinations in March 2012 and May 2012 resulted in the same findings.  *Id.* at 492, 497.

In June 2012, Plaintiff reported that her anxiety had improved with medication.  Tr. at 693.  On September 6, 2012, Plaintiff stated that she believed medication was helping her symptoms.  *Id.* at 703.  In October 2012, Plaintiff denied shortness of breath, wheezing, coughing, muscular weakness, a lack of coordination, tingling, seizures, or loss of balance.  *Id.* at 505.  Plaintiff presented with normal breathing, no abnormalities in her extremities, and a normal mood and affect.  *Id.* at 505-506.  On December 18, 2012, Plaintiff indicated that she had not been taking her medications for two weeks and that she believed her medications "were working when she was taking them."  *Id.* at 712.

In January 2013, Plaintiff denied shortness of breath, wheezing, coughing, a lack of coordination, tingling, numbness, seizures, or a loss of balance.  Tr. at 509.  Plaintiff did not report neuropathy and her diabetes was "under control."  *Id.* at 509.  It was noted that Plaintiff used a walker to ambulate, but no physical abnormalities were found on examination.  *Id.* at 511-12.  Plaintiff had normal breathing and stood and walked with a normal gait.  *Id.*  Pulmonary function testing performed later that month showed that Plaintiff had an "excellent response" following the use of bronchodilators.  *Id.* at 532.  On April 23, 2013, Plaintiff presented for diabetes management and complained of intermittent numbness and tingling in her extremities for the prior three weeks.  *Id.* at 565.  Plaintiff reported that she did not check her blood sugar levels, was not following a diet, and had not attended recommended appointments.  *Id.*  Further, Plaintiff stated that she had two seizures in the prior nine to ten months.  *Id.*  Plaintiff denied symptoms of anxiety, depression, coughing, wheezing, or shortness of breath.  *Id.* at 567.  No abnormalities were found in Plaintiff's extremities and her lungs were clear.  *Id.*

On May 22, 2013, Plaintiff underwent surgery on her right knee for an injury she sustained in a motor vehicle accident that occurred in September 2012.  Tr. at 600.  On examination during a post-surgery appointment on May 31, 2013, it was noted that Plaintiff was "doing well" and that she was feeling "much better."  *Id.* at 598.  Plaintiff's right knee had healed well and she had full strength in all muscle groups and a good range of motion.  *Id.*  It was recommended that Plaintiff ride her bicycle to lose weight.  *Id.*  On December 12, 2013, Plaintiff reported that she had fallen twice and had pain radiating into her left leg.  *Id.* at 1139.  Plaintiff did not use an ambulatory device to walk and reported that her pain improved with medications and rest.  *Id.*  A MRI showed a herniated disc and Plaintiff was prescribed an epidural injection.  *Id.* at 1136-37.

In November 2014, Plaintiff's lungs were clear and she displayed normal air movement and no respiratory distress or retractions.  Tr. at 1359.  The examining physician found no joint swelling and full strength with normal reflexes, but noted that Plaintiff's gait was slowed and that she ambulated with a cane.  *Id.*  Plaintiff did not display evidence of depression or anxiety.  Additionally, Plaintiff was instructed to quit smoking.  *Id.* at 1360. Examinations in February

-4-

2015 and April 2015 also showed no respiratory abnormalities or evidence of depression or anxiety.  *Id.* at 1378-79, 1399.  In May 2015, Plaintiff was told to continue treatment for her breathing problems and quit smoking.  *Id.* at 1600.  Plaintiff underwent lower back surgery on June 13, 2015, due to leg pain.  *Id.* at 1129-30.  On July 29, 2015, Plaintiff reported that an antidepressant improved her symptoms and showed no respiratory abnormalities, depression, or anxiety on examination.  *Id.* at 1413, 1416.

Plaintiff complained of a sore throat and earache in September 2015 and January 2016. Tr. at 1426, 1440.  On January 26, 2016, Plaintiff showed no respiratory abnormalities and no evidence of depression or anxiety.  *Id.* at 1444.  The same findings were made in April 2016, July 2016, and August 2016.  *Id.* at 1462, 1477-78, 1492.  In August 2016, an examination also showed full strength in Plaintiff's lower extremities.  *Id.* at 1492.  On October 27, 2016, Plaintiff denied chest pain or shortness of breath.  *Id.* at 1758.  On examination, Plaintiff showed no respiratory issues, evidence of depression or anxiety, or swelling in the lower extremities.  *Id.* at 1762.

### B.    Testimonial Evidence

On November 10, 2016, the ALJ held a hearing with Plaintiff and her attorney present, and a VE attending via telephone.  Tr. at 814.  After explaining the hearing proceeding, the ALJ examined Plaintiff.  Plaintiff testified that she lived with her fifteen year old son and that she relied on child support and support from her friends for money.  *Id.* at 822.  Continuing, Plaintiff stated that she had a driver's license and that she obtained a handicapped placard in 2010 or 2011 due to her chronic obstructive pulmonary disease ("COPD").  *Id.* at 823.  Plaintiff indicated that she owned her own car but only drove "maybe three times per week."  *Id.* at 824.  Next, Plaintiff testified that she had been fired from her last job after taking two days off work to seek treatment for her COPD.  *Id.* at 829-30.  Plaintiff then stated that her anxiety began due to her medical condition and treatment.  *Id.* at 830.

Continuing, Plaintiff testified that she had seizures and convulsions, and that her last seizure was three weeks prior to the hearing.  Tr. at 831.  Plaintiff stated that prior to that seizure, she had not had any seizures for approximately six months.  *Id.* at 832.  When asked for the main

reason she could not work, Plaintiff responded "[l]eaving the house."  *Id.* at 833.  Plaintiff stated that she never left her house alone, except for appointments.  *Id.* at 834.  The ALJ then asked Plaintiff whether she thought her medications were effective and Plaintiff responded in the negative.  *Id.* at 838.  Plaintiff testified that she tried to go bowling, but had to keep going outside due to anxiety.  *Id.* at 839-40.  Additionally, Plaintiff stated that her sons played in the school band and she attended concerts, but that she could not stay for the entire event.  *Id.* at 843-44.  Plaintiff indicated that she shopped for groceries with her children in the early morning or late at night.  *Id.* at 844-45.

Next, Plaintiff stated that she spent a "couple" of hours a day on Facebook and played video games on her laptop for "maybe three, three-and-a-half hours."  Tr. at 848.  Plaintiff indicated that she had quit smoking approximately two weeks prior to the hearing and that she had quit for forty-five days the previous summer.  *Id.* at 851-52.  Continuing, Plaintiff stated that she had been prescribed her walked and shower chair in 2010 or 2011 when she obtained the handicapped placard.  *Id.* at 852-53.  Plaintiff then stated that she had to lay in bed when constipated due to her irritable bowel syndrome.  *Id.* at 855.  When asked about her daily routine, Plaintiff testified that she performed household chores at a slow pace, cooked meals, and cared for her dog with the help of her children.  *Id.* at 857-59.

Plaintiff was then examined by her attorney.  When asked to described her anxiety when leaving her home, Plaintiff testified that she could not stay for an entire concert at her son's church and that she felt that people were staring at her during the event.  Tr. at 866-67.  Plaintiff stated that she experienced migraines once or twice per week.  *Id.* at 870.  Next, the ALJ examined the VE.  *Id.* at 872.  The VE testified that an individual of Plaintiff's age, education, work experience, and RFC could perform work as kitchen helper, general office clerk, and mail room clerk.  *Id.* at 874-75.  Following the examination of the VE, the ALJ concluded the hearing.  *Id.* at 879.

### III.    RELEVANT PORTIONS OF THE ALJ'S DECISION

On March 1, 2017, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI.  Tr. at 748.  The ALJ stated that Plaintiff met the insured status requirements of the Social

Security Act through June 30, 2015, and that she had not engaged in substantial gainful activity since March 20, 2011, the alleged onset date. *Id.* at 753. Continuing, the ALJ found that Plaintiff had the following severe impairments: obesity with a body mass index over thirty-six; COPD; degenerative disc disease L5-S1, status post surgery; diabetes mellitus; diabetic neuropathy; major depressive disorder; panic with agoraphobia; diverticulitis; seizures/convulsions; and right carpal tunnel syndrome. *Id.* at 753. The ALJ then stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 754.

After consideration of the record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolding; occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to pulmonary irritants such as dust, odors, and fumes; avoid all exposure to hazards such as dangerous moving machinery or unprotected heights; no commercial driving; frequently handle and finger with the right dominant hand; understand, remember, and carry out simple instructions; perform simple, routine, and repetitive tasks, but not at a production rate place such as an assembly line; adapt to routine changes in the workplace that are infrequent and easily explained; interact occasionally with supervisors and coworkers; and never interact with the general public. Tr. at 758.

The ALJ stated that Plaintiff was unable to perform any past relevant work. Tr. at 769. Continuing, the ALJ indicated that Plaintiff was a younger individual on the alleged onset date, had at least a high school education, and was able to communicate in English. *Id.* The ALJ stated that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 20, 2011, through the date of the decision. *Id.* at 770.

## IV.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to

social security benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward

with the evidence in the first four steps and the Commissioner has the burden in the fifth step.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and

makes a determination of disability.  This Court's review of such a determination is limited in

scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).

Therefore, this Court's scope of review is limited to determining whether substantial evidence

supports the findings of the Commissioner and whether the Commissioner applied the correct

legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's

findings if they are supported by "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.     LAW AND ANALYSIS

### A.     RFC Finding

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence. ECF Dkt. #12 at 6. Specifically, Plaintiff claims that the ALJ failed to properly analyze her panic disorder with agoraphobia. *Id.* at 8. Plaintiff states that this case was remanded based on the prior ALJ's failure to properly evaluate her panic disorder with agoraphobia as a medically determinable impairment and that, although the ALJ determined that it was a severe impairment, the decision still failed to properly evaluate the limitations and incorporate those limitations into the RFC finding. *Id.* Continuing, Plaintiff avers that the ALJ "merely indicated that [Plaintiff's] mental impairments were 'considered singly and in combination, [and] do not meet or medically equal the criteria of Listings 12.04 and 12.06.'" *Id.* at 8 (quoting Tr. at 756). Plaintiff states:

> The ALJ's failure to discuss this Listing makes it impossible for a reviewing body to determine if the ALJ evaluated this Listing and merely neglected to discuss it in the opinion or, in the alternative, if the ALJ completely failed to analyze the evidence as it relates to the Listings. As a rule, the ALJ must build an accurate and logical bridge between the evidence and her conclusion.

*Id.* (internal citations omitted).

Next, Plaintiff claims that the ALJ's RFC determination fails to include and/or accommodate all of the limitations supported by the evidence showing that she was diagnosed with major depressive disorder and a panic disorder with agoraphobia and that she suffers from panic attacks that are exacerbated by social situations.  ECF Dkt. #12 at 9.  Plaintiff also notes that she reported that she: rarely left her home without a friend; experienced panic attacks when shopping; and left a friend at a dentist's office because there were too many people in the waiting room.  *Id.*  Further, Plaintiff asserts that the RFC finding is similar to the finding of the prior ALJ and fails to account for evidence that supports a more restrictive RFC finding, including an opinion from a treating nurse practitioner.  *Id.* at 10.  Additionally, Plaintiff avers that the ALJ should have sought new opinion evidence when making the RFC determination because the opinions that were relied upon were provided in February 2012, over four years prior to the most recent hearing.  *Id.*  Continuing, Plaintiff asserts that the ALJ erred by failing to discuss the impact of her use of a cane/walker on her ability to work.  ECF Dkt. #12 at 11.  Plaintiff states that the medical evidence shows that she requires a cane and/or a walker to ambulate.  *Id.*  According to Plaintiff, the ALJ failed to account for the fact that she would only have the use of one hand during ambulation since the other hand would be holding the cane.  *Id.*

Defendant contends that substantial evidence supports the ALJ's RFC finding.  ECF Dkt. #14 at 13.[3]  Specifically, Defendant asserts that the ALJ considered multiple factors drawn from the record that were inconsistent with disabling mental limitations.  *Id.*  Defendant states that the ALJ reasonably concluded that the record was inconsistent with Plaintiff's allegations of disabling anxiety.  *Id.*  Continuing, Defendant indicates that the ALJ considered that the record reflected relatively mild depression and anxiety symptoms that improved with medication and that this conclusion is supported by treatment notes.  *Id.* at 14-16.  Defendant then states that the ALJ properly concluded that Plaintiff's regular activities and demonstrated abilities were inconsistent with her allegation of debilitating agoraphobia and anxiety.  *Id.* at 16-17.

---

[3]Defendant addresses the first and third issues presented by Plaintiff in conjunction.  The undersigned will address the issues in the order in which they were raised by Plaintiff.  *See* ECF Dkt. #14 at 13-21.

Next, Defendant asserts that the ALJ properly considered and assigned appropriate weight to the opinions offered by the treating sources.  ECF Dkt. #14 at 17-19.  Defendant then states that the ALJ was not required to seek additional medical opinions because the ALJ considered the offered opinions and determined that the opinions remained consistent with the record as a whole, including the evidence dating from after the opinions were submitted.  *Id.* at 19.  Regarding Plaintiff's argument that the ALJ improperly rejected her use of a cane, Defendant avers that the ALJ explicitly acknowledged the use of a cane multiple times in the decision and cited substantial evidence for disregarding her use of a cane.  *Id.* at 20-21.

Plaintiff's contention that the ALJ's RFC finding is not supported by substantial evidence is without merit.  When issuing the RFC finding the ALJ provided a thorough recitation of the evidence and properly evaluated Plaintiff's limitations and incorporated those limitations into the RFC finding.  The ALJ indicated that a x-ray taken in March 2011 was normal, Plaintiff's assessment was acute bronchitis, and she was discharged in an improved and stable condition.  Tr. at 760.  Continuing, the ALJ noted that records from March 29, 2011, showed that Plaintiff's condition was unremarkable and her physical examination was unremarkable.  *Id.*  The ALJ then stated that a x-ray taken in May 2011 showed no acute pulmonary findings and a physical examination in July 2011 was unremarkable.  *Id.*  Next, the ALJ indicated that on July 28, 2011, it was noted that Plaintiff's history contained episodes of depression with no treatment for the prior year.  *Id.* at 761.  The ALJ stated that these medical notes showed that Plaintiff admitted only mild depression and that her chief complaint in August 2011 was insomnia with some anxiety due to mold in her home.  *Id.*

Continuing, the ALJ indicated that Plaintiff's symptoms of anxiety and depression were mild in September 2011 and that her chief complaints were anxiety, coughing, and insomnia.  Tr. at 761.  The ALJ also noted that Plaintiff reported that her seizures could be controlled, she had not had a seizure in the prior year, and her cough had improved with the use of an inhaler.  *Id.*  It was also noted by the ALJ that Plaintiff denied any symptoms and her physical and psychiatric examination was normal.  *Id.*  The ALJ then stated that a chest x-ray taken on September 23, 2011, showed no active cardiopulmonary disease.  *Id.*  Next, the ALJ indicated that Plaintiff

-11-

reported that her mood improved with medication and was assessed with mild depression in November 2011. *Id.* Plaintiff denied any sleep complaints and was negative for anxiety and depression. *Id.* The ALJ then noted that Plaintiff was assessed with COPD and cigarette smoking and was told to quit smoking. *Id.* Further, the ALJ indicated that Plaintiff was able to exercise and climb stairs and denied and psychiatric symptoms in December 2011. *Id.*

The ALJ stated that Plaintiff complained about her breathing, sleeping, and depression in February 2012, but did not mention any seizure problems. Tr. at 761. Continuing, the ALJ indicated that Plaintiff reported that her depression "came and went" and that she could not work due to breathing problems and problems lifting heavy objects. *Id.* The ALJ noted that Plaintiff stated that she smoked one pack of cigarettes per day despite her breathing problems. *Id.* Regarding Plaintiff's daily activities, the ALJ stated that she reported that she took her son to school, washed dishes and laundry, swept, dusted, prepared dinner, and helped her son with homework. *Id.* The ALJ then indicated that Plaintiff reported frequent seizures lasting thirty-five to forty-five minutes later in February 2012, but noted that she stated that she continued to drive. *Id.* at 762. Continuing, the ALJ stated that Plaintiff complained of a seizure every six months in April 2013. *Id.*

Next, the ALJ indicated that an examination conducted on February 24, 2012, showed unremarkable results and Plaintiff denied any impairment in social situations. Tr. at 762. The ALJ then stated that Plaintiff underwent an upper gastrointestinal endoscopy and colonoscopy in April 2012, but that she reported normal bowel movements with no pain, nausea, vomiting, or abdominal discomfort in July 2012. *Id.* Continuing, the ALJ noted that Plaintiff stated that her medication was helping her regurgitation problems and that she was negative for any gastrointestinal symptoms. *Id.* Accordingly, the ALJ determined that the record did not support Plaintiff's testimony regarding her daily constipation that required her to stay home. *Id.*

The ALJ then stated that Plaintiff reported a history of seizures since birth during a neurological consultation in March 2012. Tr. at 762. Continuing, the ALJ noted that Plaintiff's examination showed full strength throughout, normal mental findings, and normal physical findings other than some reduced reflexes. *Id.* The ALJ also indicated that Plaintiff ambulated

-12-

independently and had normal gait, posture, and heel and tandem walk.  *Id.*  Further, the ALJ stated that an electroencephalogram showed normal results with no epileptiform discharges or focal blatant activity.  *Id.*  The ALJ noted that a psychiatric evaluation performed in April 2012 was normal and Plaintiff was assessed with major depression disorder (recurrent, moderate) and agoraphobia with panic disorder.  *Id.*  Additionally, the ALJ indicated that Plaintiff's pulmonary function tests improved in January 2013.  *Id*. at 762-63.

Next, the ALJ stated that Plaintiff was assessed with diabetes on March 1, 2012, due to an elevated blood sugar level of 194.  Tr. at 763.  The ALJ noted that Plaintiff's physical and psychiatric examination was normal.  *Id.*  Continuing, the ALJ stated that Plaintiff testified that she had a disability placard since 2010 due to her breathing, however, she requested a placard on May 7, 2012, and was told to see a pulmonologist.  *Id.*  Additionally, the ALJ noted that Plaintiff did not appear to be out of breath at this examination and her physical and psychiatric examination was normal.  *Id.*  The ALJ then indicated that Plaintiff testified that her psychotropic medications were not effective, however, she reported in June 2012 and December 2012 that her medications were effective.  *Id.*

Continuing, the ALJ stated that Plaintiff denied any depression or anxiety in July 2012.  Tr. at 763.  The ALJ noted that Plaintiff's diabetes was under control in January 2013 and she denied any symptoms.  *Id.*  Next, the ALJ indicated that Plaintiff complained of symptoms from her diabetes in April 2013, but that she denied following a diabetic diet, denied any weakness, had not seen her seizure physician for a year, and denied any seizures since January 2012.  *Id.*  The ALJ also noted that Plaintiff reported that she had not had any seizures for six to seven months prior to the seizure in January 2012.  *Id.*  Continuing, the ALJ indicated that despite the normal physical examination on April 23, 2013, Plaintiff returned on May 2, 2013, and ambulated with a walker and had an abnormal gait.  *Id.*  The ALJ then stated that Plaintiff had knee surgery in May 2013 and her knee improved, and that there was no evidence that she needed a walker due to any other impairment.  *Id.*  Additionally, the ALJ noted that Plaintiff's strength was normal throughout and, other than some right knee tenderness and irritated nerves, the examination was normal.  *Id.*  The ALJ then stated that Plaintiff did not present with a walker

-13-

at the orthopedic follow-up appointment on May 31, 2013, and she reported that her medications were working. *Id.*

Next, the ALJ indicated that Plaintiff was seen at an emergency room after a fall in September 2013.  Tr. at 764.  The ALJ noted that Plaintiff's boyfriend stated that she did not have a seizure.  *Id.*  Regarding any injuries from the fall, the ALJ stated that an examination in December 2013 showed a herniated disc at the L5-S1 level and some changes at the L4-L5 level. *Id.*  The ALJ indicated that physical therapy and injections failed and Plaintiff underwent an L5-S1 microdiscectomy on June 13, 2015.  *Id.*

Continuing, the ALJ stated that Plaintiff complained of abdominal pain and diabetes symptoms on November 4, 2014, and that the resulting physical examination found clear lungs, no wheezing, no rails, no rhonchi, and normal air movement.  Tr. at 764.  The ALJ noted that the muskoskeletal examination was normal, Plaintiff's strength was 5/5 throughout, and the neurological examination revealed no focal deficits.  *Id.*  Additionally, the ALJ stated that Plaintiff was moving slowly with a cane.  *Id.*  The ALJ then indicated that there was no evidence of any assistive device when Plaintiff presented for a follow-up appointment on February 5, 2015.  *Id.*  Further, the ALJ stated that the physical and psychiatric examination was unremarkable.  *Id.*  The ALJ noted that physical and psychological examinations conducted in April 2015, July 2015, September 2015, December 2015, January 2016, and March 2016 were unremarkable and that Plaintiff reported that her medications were working without side effects during this period.  *Id.*

Next, the ALJ stated that Plaintiff reported a breathing problem during a physical and psychiatric examination conducted on April 26, 2016.  Tr. at 764.  The ALJ indicated that Plaintiff's average blood glucose level was 7.8 and that she was not checking her glucose levels at home.  *Id.*  Additionally, the ALJ stated that Plaintiff denied shortness of breath and stated that she had resumed smoking after quitting for six weeks.  *Id.*  The ALJ then noted that Plaintiff reported in May 2016 that she had a new friend, went bowling for an hour, and was going to her son's concert despite some ongoing anxiety in public places.  *Id.*  Continuing, the ALJ stated that Plaintiff denied any shortness of breath and indicated that she needed to use an inhaler when

-14-

active. *Id.* at 765. The ALJ noted that there was no evidence of any assistive device and the examination results were normal. *Id.* Additionally, the ALJ stated that Plaintiff complained of a seizure related to dehydration and that her last seizure was six to eight months ago. *Id.* The ALJ noted that Plaintiff's blood sugar level was elevated to 11.4 because she was drinking Kool-Aid and that she denied any shortness of breath. *Id.* Further, the ALJ indicated that the physical and psychological examination was unremarkable. *Id.*

After discussing the medical evidence, the ALJ addressed inconsistencies in Plaintiff's alleged limitations. Tr. at 765. The ALJ determined that the alleged severity and duration of Plaintiff's symptoms and limitations were inconsistent with her treatment history, activities of daily living, and the objective evidence. *Id.* Continuing, the ALJ stated that Plaintiff testified that her most limiting condition was anxiety, she could not work due to difficulty being in public, and that she had no benefits from medication. *Id.* The ALJ indicated that Plaintiff reported on several occasions that medications were beneficial. *Id.* Regarding her allegations of anxiety, the ALJ stated that Plaintiff denied any impairment in social situations. *Id.* The ALJ also noted that Plaintiff reported that she: was getting out more with her son and went to a school orientation; had a boyfriend and attended a basketball game; had no difficulty being around her family, friends, and people she knew; was walking her dog with her son; attended her son's sporting events; had a new friend and went bowling for an hour; went to her son's concert with some anxiety; and shopped for school items at Walmart. *Id.*

Additionally, the ALJ discussed Plaintiff's testimony from the hearing held on November 10, 2016. Tr. at 765. Specifically, the ALJ reported that Plaintiff stated that she: had a driver's license; drove her son to school; drove approximately three times per week; shopped at the grocery store and Walmart; attended the hearing alone; attended recent medical appointments alone; went bowling with a friend; attended four band concerts with approximately 200 attendees; went to a baptism; attended two church concerts; and washed laundry after her son carried it to the public laundry room. *Id.* The ALJ concluded that Plaintiff's activities and functioning did not support her allegations of severe difficulty being in public, but instead supported the social limitations as stated in the RFC finding. *Id.*

-15-

Continuing, the ALJ stated that the record supported some worsening COPD near the alleged onset date and treatment for acute bronchitis. Tr. at 765. The ALJ indicated that pulmonary function tests showed severe obstructive airway disease with the most recent test in January 2013. *Id.* According to the ALJ, thereafter the record did not reveal any frequent hospitalizations and Plaintiff continued to smoke with a period of cessation of only six weeks. *Id.* at 765-66. The ALJ stated that the vast majority of examinations from 2012 to 2016 noted normal respiratory functioning as well as normal physical and psychiatric examinations. *Id.* at 766. In support of this determination, the ALJ cited medical records from January 2013, April 2013, May 2015, January 2016, and October 2016 showing that: Plaintiff often denied symptoms; physical and psychological examinations were unremarkable; and Plaintiff denied shortness of breath or musculoskeletal complaints. *Id.*

The ALJ then explained that Plaintiff's diabetes was managed with medications when she was compliant and that there was evidence of an elevated blood sugar level due to the consumption of "a lot" of Kool-Aid. Tr. at 766. Regarding Plaintiff's diverticulitis and gastroesophageal reflux disease, the ALJ indicated that these conditions were controlled with medication. *Id.* The ALJ stated that there was no evidence that Plaintiff had constipation and diarrhea daily as alleged. *Id.* Continuing, the ALJ stated that Plaintiff's knee surgery was effective with no complications or evidence of limitations after the surgery. *Id.* The ALJ indicated that Plaintiff's lumbar microdiscectomy was effective based on the numerous normal physical examinations after the surgery and only a single complaint of sciatica in August 2016. *Id.*

Next, the ALJ stated that Plaintiff's loss of consciousness was due to dehydration and her testimony regarding the frequency of seizures was not consistent with the records showing gaps in seizures lasting over six months. *Id.* The ALJ noted that Plaintiff continued to drive despite the allegations of frequent seizures. *Id.* Further, the ALJ stated that the physical examinations did not support the alleged severity of Plaintiff's carpal tunnel syndrome as there was no evidence of a recommendation for surgery or injections, or that Plaintiff was wearing a brace regularly. *Id.* The ALJ also noted that Plaintiff testified that she sometimes had no pain in her

-16-

wrist. *Id.* Additionally, the ALJ reiterated that Plaintiff's lumbar and knee surgeries were effective. *Id.* The ALJ continued, stating that the medical records showed that medications had been relatively effective in controlling Plaintiff's symptoms and that she reported only brief side effects in the period at issue. Tr. at 766. Regarding Plaintiff's walker and cane, the ALJ indicated that there was no evidence that either assistive device was medically necessary. *Id.*

The ALJ then moved on to the opinion evidence. Tr. at 767. First, the ALJ addressed the opinion of Diane Manos, M.D. *Id.* The ALJ stated that Dr. Manos opined that Plaintiff could perform a range of medium work with additional limitations, but determined that her lumbar spine degeneration, neuropathy, respiratory symptoms, COPD, carpal tunnel, and other impairments supported a finding that she could perform only light work. *Id.* Continuing, the ALJ explained that great weight was assigned to the opinions from the state agency psychological consultants indicating that Plaintiff had some degree of mental limitations, as stated in the RFC finding. *Id.* The ALJ assigned great weight to the opinion of the psychological consultant, who also indicated that Plaintiff had moderate social and mental difficulties. *Id.* Next, the ALJ stated that little weight was assigned to the opinion of Plaintiff's pulmonologist because it was inconsistent with the evidence of record. *Id.* at 767-68. The ALJ also addressed the opinion of Plaintiff's registered nurse, Lisa Agnew. *Id.* at 768. First, the ALJ stated that Ms. Agnew was not an acceptable medical source, but her opinion was still considered. *Id.* The ALJ assigned the opinion little weight since it was inconsistent with the record. *Id.* Finally, the ALJ assigned the opinion of Plaintiff's orthopedist little weight due to the conclusion that Plaintiff was unable to kneel or climb stairs was not supported by the record. *Id.*

Plaintiff's first contention is that the ALJ failed to properly analyze her panic disorder with agoraphobia. ECF Dkt. #12 at 6. The ALJ's decision, as stated above, thoroughly discussed the evidence presented in the record, including the inconsistencies in Plaintiff's testimony alleging severe agoraphobia and her activities based on her representations to medical providers. As stated by the ALJ after a discussion of the evidence presented in this case, Plaintiff drove her son to school, drove herself to medical appointments, shopped, attended

-17-

concerts and sporting events, and attended events at her church.  *See* Tr. at 765.  The ALJ did not fail to discuss Plaintiff's agoraphobia as suggested in Plaintiff's brief, but rather addressed her agoraphobia and found that it did not cause limitations as severe as the limitations alleged.

Next, Plaintiff claims that the ALJ failed to address Listings 12.04 and 12.06 in a manner that would allow meaningful review.  ECF Dkt. #12 at 8.  Plaintiff is mistaken.  The ALJ expressly discussed Listings 12.04 and 12.06 and provided a detailed analysis of why the decision found that Plaintiff had: moderated limitations in the area of understanding, remembering, or applying information; moderate limitations in the area of interacting with others; moderate limitations in the area of concentrating, persisting, or maintaining pace; and mild limitations in the area of adapting or managing oneself.  Tr. at 756-57.  Each finding was supported with citations to the record and thoroughly explained.

Plaintiff also claims that the ALJ failed to accommodate all of her limitations and cites to her own statements regarding her limitations resulting from agoraphobia and panic disorder.  ECF Dkt. #12 at 9.  Contrary to Plaintiff's position, the ALJ discussed the medical evidence presented in this case, as stated above, which consistently showed that Plaintiff was not as limited by her agoraphobia and panic disorder as she claimed at the hearing.  Moreover, even if Plaintiff has cited instances where she was impaired by her agoraphobia and panic disorder, the Court must affirm the Commissioner's findings if they are supported by relevant evidence that a reasonable mind might accept as adequate to support that conclusion.  *Cole*, 661 F.3d at 937.  As discussed at length above, the ALJ cited numerous treatment notes indicating that Plaintiff's limitations were not as severe as alleged.

Next, Plaintiff states that the ALJ did not assign proper weight to the opinion of her treating nurse practitioner.  As an initial matter, and as stated by the ALJ, Plaintiff's treating nurse practition, Ms. Agnew, is not an acceptable medical source under the applicable rules and regulations.  *See* Tr. at 768 (citing Social Security Ruling ("SSR") 06-03p).  In any event, the ALJ did consider Ms. Agnew's opinion and explained that the opinion was inconsistent with Ms. Agnew's treatment notes and the other evidence in the record.  *See id.*  Plaintiff does not take issue with the ALJ's treatment of any opinion offered by an acceptable medical source.

-18-

Plaintiff also asserts that the ALJ should have sought new opinion evidence when making the RFC finding.  ECF Dkt. #12 at 10.  It is Plaintiff's burden to establish that she is disabled. *Moon*, 923 F.2d at 1181.  Plaintiff fails to show how the ALJ erred by relying on the evidence in the record and does not cite to any evidence that the ALJ failed to consider.  *See* ECF Dkt. #12 at 10.  Further, it does not appear that Plaintiff made any effort to obtain new opinion evidence and instead relies on the ALJ to produce opinion evidence in support of her disability claim.  Plaintiff fails to cite any precedent indicating that the ALJ must produce opinion evidence in the absence of Plaintiff offering any new opinion evidence in support of her claim.  *See id.*  Finally, Plaintiff claims that the ALJ did not consider her use of a cane/walker.  ECF Dkt. #12 at 11.  Plaintiff is mistaken.  The ALJ expressly noted Plaintiff's use of a cane/walker and determined that there was no medical evidence showing that a cane/walker was medically necessary.  Tr. at 764, 766.  Additionally, as stated above, the ALJ pointed out that Plaintiff appeared for medical appointments without any assistive device.  *Id.*  For these reasons, Plaintiff has failed to show that the ALJ's RFC finding is not supported by substantial evidence.

## B.    Medical Expert

Next, Plaintiff asserts that the ALJ erred by not appointing a medical expert to evaluate the new evidence added to the record since the initial review.  ECF Dkt. #12 at 12.  Relying on SSR 96-6p, Plaintiff reiterates her contention that the ALJ was required to obtain a new medical opinion because of the length of time between the last medical examination contained in the record and the decision.[4]  *Id.* at 13.  Defendant contends that SSR 96-6p does not impose such a requirement.  ECF Dkt. #14 at 24.

SSR 96-6p does not require the ALJ to seek new opinion evidence.  Rather, SSR 96-6p requires an ALJ to seek new opinion evidence under the following circumstances:

> When additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the

---

[4]SSR 96-6p was rescinded on March 27, 2017.  The undersigned recognizes that although this case was filed after SSR 96-6p was rescinded, the case was originally filed prior to the rescission before it was remanded.  Defendant does not assert that SSR 96-6p does not apply in this case.  *See* ECF Dkt. #14 at 24.

-19-

impairment(s) is not equivalent in severity to any impairment in the Listing of impairments.

SSR 96-6p leaves the determination of whether new opinion evidence must be obtained to "the opinion" of the ALJ. Here, the ALJ determined that new opinion evidence was not necessary to issue a decision. Moreover, Plaintiff fails to cite any evidence showing that her limitations met or equaled a listing. *See* ECF Dkt. #12 at 12-14. Accordingly, Plaintiff has failed to show that the ALJ erred by failing to appoint a medical expert to issue a new opinion.

**C.** **Credibility**

Plaintiff contends that the ALJ's credibility determination is not based on substantial evidence. ECF Dkt. #12 at 14. Specifically, Plaintiff faults the ALJ for improperly characterizing her activities of daily living. *Id.* at 15. Plaintiff claims that although she went bowling for one hour, she had to leave the bowling alley and go outside multiple times due to her anxiety. *Id.* Additionally, Plaintiff states that although she attended her son's concerts and sporting events, she was unable to stay for the duration of the events. *Id.*

Plaintiff's argument is without merit. Even accepting Plaintiff's contention that the ALJ placed too much reliance on her bowling trip and attendance at her son's events, the ALJ cited many others reasons when issuing the credibility determination. After discussing the medical evidence at length, the ALJ indicated that Plaintiff testified that medications were not helpful despite multiple treatment notes in which Plaintiff reported that her medications provided relief. Tr. at 765. The ALJ also noted that Plaintiff denied any impairment in social situations despite her allegation that her anxiety was disabling. *Id.* Additionally, the ALJ stated that Plaintiff reported: "getting out more" with her son; having a boyfriend; attending a basketball game; walking her dog; shopping at the grocery store and Walmart; driving her son to school; driving approximately three times per week; attending medical appointments; attending church events; and washing laundry in a public laundry room. Tr. at 765. The ALJ also indicated that Plaintiff continued to smoke cigarettes despite allegations of disabling COPD. *Id.* at 765-66. Moreover, the ALJ cited numerous treatment records from the relevant period in which Plaintiff denied any symptoms and her physical and psychological examinations were unremarkable. *Id.* at 766. The

ALJ also noted that Plaintiff did not follow treatment recommendations regarding her diabetes. *Id.* Further, the ALJ stated that Plaintiff's testimony about her frequent seizures was inconsistent with the medical record and that Plaintiff continued to drive despite the allegation of frequent seizures. *Id.*

While Plaintiff contends that the ALJ mischaracterized her trip to the bowling alley and her attendance at her son's events, she fails to address the majority of the reasons the ALJ provided when determining that she was less than fully credible. Most notably, Plaintiff fails to reconcile her claim that she is unable to leave her home due to COPD, depression, anxiety, constipation, and seizures with the relatively normal treatment notes that are consistent throughout the record. Additionally, Plaintiff made statements during her testimony that conflict with what she reported to treatment providers, such as indicating that her medications were ineffective despite multiple instances in the record where she reported her medications were effective. For these reasons, the ALJ's decision regarding Plaintiff's credibility is supported by substantial evidence.

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: February 8, 2019                     ___/s/George J. Limbert_____
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).